IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jessica Riley, | ) C. A. No. 2:07-0070-MBS-RSC |
| Plaintiff, | ) |
| -versus- | ) **REPORT AND RECOMMENDATION** |
| City of Charleston Police Department, | ) |
| Defendant. | ) |

This employment discrimination case alleging violations of Title VII, 42 U.S.C. § 2000e-2, 3, along with a state law breach of contract[1] claim is before the undersigned United States Magistrate Judge for a Report and Recommendation on the defendant's motion for summary judgment. 28 U.S.C. § 636(b).

The plaintiff, Jessica Riley, sued her former employer, the City of Charleston Police Department, in state court and the defendant removed the action to this court on January 8, 2007. Discovery is complete. The defendant filed a motion for summary judgment on July 24, 2007. The plaintiff opposed the motion on August 23, 2007, and submitted an affidavit of Plaintiff. The defendant filed a reply on August 30, 2007, and objected to the affidavit. Oral argument on the motion was had before the undersigned on September 19, 2007, and also on September 19, 2007, the defendant filed additional deposition transcripts.

---

[1] Plaintiff withdrew this cause of action at oral argument.

Hence it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to

withstand a motion for summary judgment. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

**FACTS**

These facts are according to Plaintiff's deposition taken on June 28, 2007, and taken as true for purposes of the summary judgment motion.

Plaintiff began work with the City on April 2, 2001, as a police officer assigned to the patrol division. In May of 2005, Plaintiff learned that she was pregnant and told a supervisor, Lt. Anita Craven, that Plaintiff did not feel comfortable staying in patrol during her pregnancy because of the nature of the duties and the potential for danger to her unborn child. Plaintiff and Lt. Craven had some discussions about her options. However, she miscarried only a few days later, and the point became moot. Plaintiff remained in her patrol position. Plaintiff alleges that, during their discussions about possible options, Lt. Craven had commented that they were short on staff, and that it was not a convenient time for Plaintiff to be pregnant.

In late July 2005, Plaintiff learned that she was pregnant again. As before, Plaintiff desired to leave patrol because of the potential risk to her unborn child in patrol. Again, she spoke with Lt. Craven about her options for light duty. Lt. Craven offered to accommodate Plaintiff by assigning her to temporary duty in dispatch.

Plaintiff testified that, in seeking a temporary transfer, she had two goals. Her primary goal was to get out of patrol or any similar position that she thought was unsafe for her baby. Second, she hoped that the new temporary assignment could be a "sworn" certified officer position, as opposed to a "civilian" position within the department. The dispatch assignment that Lt. Craven offered Plaintiff is not a certified position, but it satisfied Plaintiff's safety considerations. Plaintiff asked if there was not a "sworn" position available with light duty. Lt. Craven found an opening in prisoner identification which basically entailed fingerprinting detainees and completing mandatory paperwork and data entry of pertinent identification information.

Plaintiff was offered the prisoner I.D. position, but she declined because she would have to be in close proximity with detainees and she was concerned about communicable diseases and the potential for an altercation if a detainee were drunk, belligerent, or otherwise uncooperative. Although Plaintiff

4

feels that there must have been other positions available there is no evidence of that. Therefore, Plaintiff was given her choice between a temporary assignment to dispatch or a temporary assignment to the "sworn" prisoner I.D. job. She chose dispatch and she wanted to move to dispatch on August 25, 2005, although Lt. Craven asked her to stay another week because they were shorthanded. Nevertheless Plaintiff was transferred on August 25, 2005, as she requested.

In order to effect the transfer to dispatch, Plaintiff filled out a request slip formally requesting the transfer to dispatch. Plaintiff testified that she typed and signed the request form which reads:

> I, Jessica Riley, respectfully request to be taken out of Team Ten/Uniform Division effective August 25, 2005, due to my pregnancy. I respectfully request to be reassigned to Communications for the duration of my pregnancy and recovery period after delivery. My current expected due date is April 2006, and would like to return to the Team Patrol/Uniform Division when I am released for full duty status from my doctor. I appreciate your consideration in this matter.

Plaintiff testified that her immediate supervisor, Cpl. Chris Adams, stood beside her and told her what to type, and she typed and signed it. Plaintiff claims that, had she been drafting it herself, she would not have included the request to return to Patrol after her maternity leave. However, Plaintiff concedes that she did not want to stay in dispatch after her maternity leave, but that she did not know where she wanted to

5

work when she returned.

Because she was no longer on patrol she was not assigned a patrol car.

Sometime in September 2005 Plaintiff ran into Sgt. David Boylston in a hallway. Boylston was assigned to the Internal Affairs (I.A.) division. At that time the only other officer assigned to I.A. was on leave, and Boylston mentioned that he had a back-log of work piling up with which he needed help. He asked if Plaintiff would like to come and help with some of the I.A. office backlog. According to Plaintiff, she told him that she found dispatch to be very stressful and that she would prefer to be in I.A. Plaintiff did not tell anyone other than Boylston at that time that she found dispatch to be too stressful. Plaintiff did not make any request herself to be moved to I.A. Rather, Boylston told Plaintiff that he spoke to the dispatch supervisor about it, and the dispatch supervisor said he was too short-handed to let her transfer at that time.

Subsequently, on October 25, 2005, Plaintiff approached Lt. Naomi Broughton and told her that dispatch was too stressful and she was worried the work would hurt her baby. She asked to be transferred to I.A. Plaintiff was transferred to I.A. to fill in during a temporary backlog doing background checks on applicants for employment. Plaintiff stayed there until she asked for 12 weeks of FMLA leave on March 17, 2006. Leave was granted and she

6

last worked on March 21, 2006. Plaintiff had asked to go out on March 20, 2006, and she believes the one day delay was because Broughton deliberately delayed the paperwork which she "guesses" was intended to harass her for being pregnant.

The FMLA leave was to end on June 14, 2006, but Plaintiff requested and received another 90 days leave under the City's discretionary non-FMLA leave of absence policy because she wanted to stay at home with her new baby. She was to return to work on September 13, 2006, but on August 21, 2006, she submitted a resignation effective on September 13, 2006, which she placed in Lt. Craven's mailbox. The resignation was accepted that same day. She has not applied for re-employment with the City, nor has she ever communicated with Chief Mullen or former Chief Heathington about the possibility of returning to the department.

Plaintiff deposed that she first filed a charge of discrimination on August 20, 2006. (Pl. depo. p. 141). It is stamped "received August 24, 2006," and alleged harm from May 2005. (Charge number 415-2006-00213). Notice was given to the employer on August 31, 2006. A Right to Sue letter was issued the same day, August 31, 2006. When Plaintiff got the Right to Sue letter, she asked for and got a copy of her resignation letter from the City. She saw that her resignation had been accepted and that one of her supervisors, the Captain from her patrol unit, had made a notation on it, "not eligible for

rehire." She did not apply to be rehired and the City never communicated to any potential employer that the Captain recommended that she not be rehired.

## LAW

Plaintiff alleges gender discrimination under Title VII. Title VII makes it "an unlawful employment practice for an employer ... to discharge ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1).

In the absence of direct evidence of discrimination, Plaintiff may proceed under the McDonnell Douglas burden-shifting framework. See, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998). Under this method, Plaintiff must first establish a prima facie case of discrimination. See, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742 (1993). Once Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's treatment. See, McDonnell Douglas, 411 U.S. at 802. If Defendant articulates such a reason, Plaintiff bears the ultimate burden of persuasion and must show, by a preponderance of the evidence, that Defendant's proffered reason for the treatment is pretextual.

See, id. at 804. Although the evidentiary burdens shift between the parties under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); see also, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).

Generally, the *prima facie* case for a discrimination claim under Title VII requires a plaintiff to show that: (1) she is a member of a protected class; (2) she was qualified for her job and her performance was satisfactory; (3) she suffered an adverse tangible employment action; and (4) other employees outside the protected class were treated more favorably. See, Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004).

The third prong of the *prima facie* case requires a materially adverse tangible employment action. See, e.g., Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001). In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761-762, 118 S.Ct. 2257 (1998), the Supreme Court explained that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

9

decision causing a significant change in benefits." Id., at 761, 118 S.Ct. 2257.

Plaintiff also claimed that she was retaliated against for engaging in protected activity. A separate section of Title VII, the anti-retaliation provision, forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e-3(a).

In order to establish a *prima facie* case of unlawful retaliation, an employee must show (1) that she engaged in protected activity; (2) that her employer took an action against her that a reasonable employee would have found materially adverse; and (3) that a causal connection existed between the protected activity and the asserted adverse action. Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006).

The anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or which occur at the workplace. The provision covers those, and only those, employer actions that would have been materially adverse to an objectively reasonable employee or job applicant. The Supreme Court has indicated that means that the employer's actions must be harmful to the point that they could well dissuade an objectively reasonable worker from making or

supporting a charge of discrimination. Id. Thus, the standard for determining whether employer conduct constitutes adverse employment action is broader for retaliation claims than for substantive discrimination claims.

If a *prima facie* retaliation case is established by the plaintiff, an employer may defend itself by producing evidence of a legitimate, non-discriminatory reason for taking the adverse action. Id. If the employer produces such reason, the employee must demonstrate that the proffered reason is pretextual. Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).

## DISCUSSION

In its summary judgment motion, Defendant asserts that no question of genuine material fact remain and that it is entitled to judgment as a matter of law because, among other reasons, the plaintiff suffered no actionable adverse employment action in her substantive claim or in her retaliation claim. It appears that the defendant is entitled to judgment on this basis.

By brief the plaintiff set forth the following single discriminatory act which she alleges is the substantive adverse employment decision based on animus toward her gender and pregnancy: "The Defendant's discriminatory act was to only provide the Plaintiff with two options to go from Patrol because she had become pregnant even though her Team Leader had told her

not to become pregnant." Plaintiff's brief at page 19. However, it is undisputed that Plaintiff herself asked for the transfer out of patrol. Her request was granted and she was accommodated with the offer of two options. The two options offered to the plaintiff were to transfer to Identification, a certified officer position, or to transfer to Dispatch, which was not a certified officer position but rather a "civilian" position. Although Plaintiff preferred a certified officer position, she declined the Identification position because in Identification she would have to be in close proximity with detainees and she was concerned about communicable diseases and the potential for an altercation if a detainee were drunk, belligerent, or otherwise uncooperative. There is no evidence that other positions were open. By brief, Plaintiff speculates that there must have been other open light duty positions because the department is a large 350 employee department and because she heard frequent complaints that the department was "short handed." Plaintiff's brief at page 3, footnote 3.

Unsupported speculation, as here, is simply not enough to withstand a motion for summary judgment. <u>Ash v. United Parcel Service, Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). While the court should draw reasonable inferences on behalf of the non-moving party, it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere

conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir. 1982).

Based upon this failure of proof, it appears that the plaintiff did not suffer a tangible adverse employment action necessary to meet her burden of establishing the second prong of the McDonnell Douglas *prima facie* case. <u>See</u> <u>also</u>, <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257 (1998). The defendant is entitled to summary judgment on Plaintiff's Title VII discrimination cause of action.

Likewise, it appears that the defendant is entitled to summary judgment on Plaintiff's Title VII retaliation cause of action. Plaintiff listed the alleged adverse employment actions which she contends were illegal retaliation for her complaints that she was being discriminated against as follows:

> 1. The Plaintiff requested a transfer from patrol and was only offered two positions, Identification and Dispatch, when there were other positions available in the department;
>
> 2. Being forced to submit an administration action form when other officers were not required to submit a form;
>
> 3. Not being transferred to Internal Affairs in August when requested;
>
> 4. Plaintiff was not able to retain her police cruiser or an unmarked police cruiser when others were permitted to keep theirs;
>
> 5. The Plaintiff was denied her mock turtlenecks;
>
> 6. Plaintiff was denied transfers during her pregnancy;

>7. Plaintiff was denied a training program which was requested by her supervisor while she was in Internal Affairs;
>
>8. The Plaintiff did not receive a promotion when she was eligible for the promotion;
>
>9. The Plaintiff was provided an improperly working computer monitor.
>
>10. Plaintiff's supervisor Sgt. Boyd intentionally delayed signing FMLA paperwork causing the FMLA leave to start late.
>
>11. Listing the Plaintiff as non-rehireable with the department.

Plaintiff's brief at pages 20, 21.

At oral argument Plaintiff's counsel agreed with Defendant's recitation of the facts and withdrew instances 1, 2, 3, 4, 10, and 11 because there was no evidence that they were in fact discriminatory. Counsel indicated that instance 5, that she was denied mock turtlenecks for fifteen minutes, was harassing only and not retaliatory. Counsel agreed that instances 6, 7, and 8 are not actionable because they were never presented to the EEOC. Counsel also indicated that instance 10 was not actually intended to be asserted against the defendant City. Instance number 11 is also not viable because she never reapplied to the City and, in any case, because there is no evidence of discrimination.

The remaining contention is instance 9, that plaintiff was provided with a computer with a "fuzzy" monitor while she was working in Internal Affairs and it was not replaced by the defendant for a month during which time she used her own monitor

which she brought from home. This was presented to the EEOC. However, plaintiff was only filling in temporarily in Internal Affairs and that department actually had no equipment allotted for the temporary assignment. The department located a computer for her to use but it had a "fuzzy screen" and Plaintiff felt "ridiculous" having to work on it. She let the department know her feelings, and the department ordered a new computer for her use. Plaintiff testified that she believed that she was given the faulty monitor because she was pregnant, but also identified another pregnant female who got a monitor which was not "fuzzy".

Plaintiff's conclusion is not logical and is simply not enough for a reasonable jury to conclude that the defendant illegally discriminated or retaliated against her. This is not sufficient harm to dissuade an objectively reasonable employee from making or supporting a claim of discrimination. <u>Burlington Northern & Santa Fe Ry. Co.</u>, at 2414-15 (noting that "normally petty slights, minor annoyances, and simple lack of good manners" would be of insufficient harm.). The defendant's motion should be granted.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted on the two Title VII causes of action, that the breach of

contract cause of action be withdrawn at Plaintiff's request, and this matter ended.

>                          Respectfully Submitted,
>
>                          Robert S. Carr
>                          United States Magistrate Judge

Charleston, South Carolina

November 19, 2007